**SOUTHWESTERN BELL MEDIA, INC.,**
**Plaintiff–Appellant,**

v.

**Donald ROSS, d/b/a Audio Kinetics,**
**Defendant–Respondent.**

No. 57077.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 21, 1990.

Joan Kay McMullen, St. Louis, for plaintiff-appellant.

Leonard W. Buckley, Jr., St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

In this court tried case, plaintiff, Southwestern Bell Media, Inc., sued defendant, Donald Ross d/b/a Audio Kinetics, for breach of contract. After trial, the court granted "defendant's" motion to dismiss "for lack of personal jurisdiction." We reverse and remand with directions to enter judgment in favor of Donald Ross, individually.

On appeal, plaintiff contends the contracts [1] in issue were entered into as part of the regular and normal business of Audio Kinetics, Incorporated. However, plaintiff argues, the contracts were entered into by Mr. Ross in the corporation's name, after the corporate charter had been forfeited. Therefore, plaintiff contends, Mr. Ross is individually liable for the breach of contracts in issue.

The record before us does not show that Audio Kinetics' corporate charter had been forfeited. On appeal, plaintiff seeks to correct the record by a motion to supplement it. Thus, the ultimate question we must answer is whether justice demands and our rules permit either a grant of plaintiff's motion to supplement the record or a reversal and remand to afford plaintiff another

1. There are three separate contract documents.

opportunity to attempt to make a proper record. Our answer is: No.

In its petition, plaintiff alleges: it entered into "a contract" for directory advertising with "Donald Ross D/B/A Audio Kinetics," it performed its obligations under the "contract," and "defendant" breached the "contract" by failing to make the payments required by the "contract." Plaintiff prayed for money damages.

Facially, these allegations state a claim against Donald Ross, individually, in his capacity as a sole proprietor. Apparently, as plaintiff now argues on appeal, this was not plaintiff's theory for recovery.

Prior to trial, plaintiff's counsel told the court: "I suppose we'll also have to submit the report from the Secretary of State's office as to the corporate standing of Audio Kinetics, Inc." This "report" was not certified. Without an express objection, defense counsel argued that the court could not take "judicial notice of a document from a state agency ... unless it's certified." In addition, defense counsel moved to dismiss plaintiff's petition "for lack of personal jurisdiction," because "there's been a failure to join the proper party." "[T]he contract [in issue]," defendant argued, "was made with Audio Kinetics, Incorporated, ... and not Don Ross as an individual or a person." The court denied the motion, and trial began.

During its case, plaintiff neither marked the "report" from the Secretary of State as an exhibit nor proffered it as evidence. Plaintiff simply made no reference at all to the "report."

Through its custodian of records, plaintiff did introduce three separate documents, each captioned "Agreement For Directory Advertising," between plaintiff and "Audio Kinetics." There is no express indication in these contract documents indicating the form of business organization of "Audio Kinetics." Two of the contract documents are signed by "Don Ross," as "Advertiser," with the "Title": "Pres." Plaintiff also proved the terms of each contract

and the failure to pay the balance due. Plaintiff then rested its case.

Mr. Ross was the sole witness for defendant. He acknowledged his signature on the two contract documents. But, he testified that he signed them as "[p]resident of the corporation." Defendant also introduced the Articles of Incorporation of Audio Kinetics, Inc., dated December 12, 1981.

At the close of the entire case, defendant renewed his motion to dismiss. Subsequently, the court granted the motion to dismiss "against Donald Ross individually." In its order, the court found "that at the inception of the contract(s) for services it was clear Plaintiff was dealing with a corporation and as such the above cause should have been prosecuted against the corporation." From this order, plaintiff appeals.

As noted, on appeal, plaintiff argues the corporate charter of Audio Kinetics, Incorporated was forfeited. Because Mr. Ross continued doing regular business in the corporate name after the forfeiture, plaintiff contends, he is liable, individually and personally, for the debts he incurred.

■ However, the court's order clearly shows it found the "contracts" were between plaintiff and Audio Kinetics, Incorporated, and not between plaintiff and Mr. Ross. If that finding is supported by the evidence, Mr. Ross obviously had a proper defense to a claim against him individually. *Hamilton Music, Inc., v. Gundaker Real Estate Co., Inc.,* 666 S.W.2d 840, 844–845 (Mo.App.1984).

The evidence does support the trial court's finding. As noted, two of the three contracts were signed by Mr. Ross as president of "Audio Kinetics." The corporate charter of Audio Kinetics was admitted into evidence, showing its incorporation date as December 15, 1981. Mr. Ross testified he signed the contracts in his capacity as president of Audio Kinetics, Incorporated. The trial court apparently chose to credit Mr. Ross' testimony and documentary evidence, a choice properly within its discretion. *E.g. Snowden v. Gaynor,* 710 S.W.2d 481, 483 (Mo.App.1986).

■ The crucial evidence here is the "report" from the Secretary of State allegedly showing the forfeiture of Audio Kinetics' corporate charter. If plaintiff can prove this forfeiture existed at the time the contracts were entered into by Mr. Ross, plaintiff will have shown Mr. Ross was doing business, beyond winding up corporate affairs, after the corporate charter was forfeited. On those facts, Mr. Ross would be liable personally for the debts he incurred in the corporate name. *Bodine Aluminum Co., Inc. v. Mitauer,* 776 S.W.2d 485, 487–488 (Mo.App.1989).

■ Thus, we turn to plaintiff's "Motion to Supplement the Record" with the "report" from the Office of the Secretary of State. The "report", attached to the motion, is an uncertified and unverified "Abstract of Corporate Record" from the "Office of the Secretary of State", which states that the corporate charter of Audio Kinetics, Inc. was "Forfeited [on] Nov. 1, 1983 For: Franchise Tax Not Paid".

We cannot grant this motion. As noted, this Abstract was neither offered nor received into evidence at trial. Thus, it is not part of the record on appeal, and we may not consider it. *Carondelet Savings & Loan Assn. v. Boyer,* 595 S.W.2d 744, 746 (Mo.App.1980). Moreover, the Abstract is not certified and, thus, does not meet the requirements of § 490.180 RSMo 1986, which provides "[c]opies of all papers on file in the office of the secretary of state, ... certified under the seal of the [office], shall be evidence in all courts of this state." Without other proper foundation, the Abstract is, thus, not admissible.

■ However, in its motion, plaintiff contends its failure to proffer the Abstract at trial was a technical oversight, and, "where a technical, but critical, oversight is made", plaintiff argues, "the record on appeal may be supplemented upon request by a party." In support of this argument, plaintiff cites *Union Savings Bank v. Cassing,* 691 S.W.2d 513 (Mo.App.1985). Plaintiff's reliance on *Cassing* is misplaced.

In *Cassing,* plaintiff sued defendants on a promissory note, which made the instru-

ment itself the exclusive ground for the claim. *Id.* at 514. Plaintiff failed, however, to introduce the note into evidence, and, on appeal, failed to request to supplement the record. *Id.* at 515. In dicta, the Western District did seem to suggest the record could have been supplemented on appeal. *Id.* The Court, however, reversed and remanded the case, even though plaintiff had failed to introduce the note into evidence and, thus, had failed to make a submissible case. The Court said

> where a plaintiff has by mistake or inadvertence failed to prove up a claim in a situation where the proof seems to have been available, we have no alternative but to reverse the judgment and remand the case for the reception of additional evidence.

*Id.* at 516.

The plaintiff in *Cassing*, however, had obtained a judgment, and the Court conversely stated and applied a principle long established in our courts: on appeal, a judgment should not be reversed without remand unless the court is convinced all the facts have been presented and proper proof seems unavailable. *E.g. Smith v. Terminal R.R. Assn.*, 160 S.W.2d 476, 479 (Mo.App.1942). The principle, as stated in *Cassing*, can also be sensibly applied where the appellate court announces a change in the controlling law. *E.g., Moss v. National Super Markets*, 781 S.W.2d 784, 786 (Mo. banc 1989).[2]

This principle makes sense. On appeal, it may well be just to grant another day in the trial court to a party who has obtained a judgment but through mistake or inadvertence failed to prove essential, seemingly available facts. It is strange justice, however, to grant the same relief to a party who, like plaintiff here, has failed to obtain a judgment, even though this strange justice has, on occasion, been worked. *Lamont v. Thompson*, 303 S.W.2d 589 (Mo.1957).

On this record, however, neither justice demands nor our rules permit a grant of plaintiff's motion to supplement the record or a reversal and remand for a new trial. Plaintiff has had its day in court. It failed to obtain a judgment. On appeal, it still insists on the admissibility of the essential, unproved evidence, without proper foundation. We find no justification for us to reverse and remand this cause for reception of additional evidence and, in effect, plead and prove plaintiff's case for it and thus become another party opposing defendant.

This, however, does not end the matter. Neither party questions whether the trial court granted the correct relief, based upon its findings. We do.

The trial court dismissed this action "for lack of personal jurisdiction." There is nothing in the record before us, however, to show or even suggest the trial court lacked personal jurisdiction over Mr. Ross. The record fails to show that Mr. Ross was not properly served. Whether he is correct or incorrect in his argument that he cannot be held personally liable for the alleged breach of contract is irrelevant to the issue of the trial court's personal jurisdiction over him. If plaintiff failed to prove a claim against Mr. Ross, the proper relief to be granted him is a judgment in his favor and against plaintiff, not a dismissal of plaintiff's claim against him for lack of personal jurisdiction.

Accordingly, we reverse and remand this cause and direct the trial court to enter a judgment in favor of Donald Ross, individually, and against plaintiff.

SMITH and GRIMM, JJ., concur.

---

**2.** The principle may have had it genesis, for an entirely different reason, in *Turner v. Haar*, 114 Mo. 335, 21 S.W. 737 (1893). In *Turner*, the court found plaintiff's evidence of negligence insufficient but did not reverse outright as defendant asked the court to do. The court declined "to adopt ... the rule commonly applied where plaintiff fails to make out his case by the evidence," and remanded to allow the plaintiff to present other evidence. *Id.* 21 S.W. at 739. The reason given was that the trial court at some point had held the plaintiff made a prima facie case and was not required to go further. *Id.* This implies the trial court had improperly lulled the plaintiff into false security and created, perhaps, a "judicial estoppel."